# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>**INFORMATION ASSOCIATED WITH ONE PHONE<br>NUMBER STORED AT PREMISES CONTROLLED BY<br>GRASSHOPPER GROUP, LLC C/O LOGMEIN, INC.** | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 20-ML-876 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, hereby incorporated by reference

located in the _____ District of _____ Massachusetts _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, hereby incorporated by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| See Attached Affidavit in<br>Support of Search Warrant | |

The application is based on these facts:

See Attached Affidavit in Support of Search Warrant

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Kathia Meade, FBI, Supervisory Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means).*

Date: ___06/26/2020___

_____
*Judge's signature*

City and state: Washington, DC

Robert B. Collings, United States Magistrate Judge
*Printed name and title*

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means        ☐ Original        ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
### District of Columbia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>INFORMATION ASSOCIATED WITH ONE PHONE<br>NUMBER STORED AT PREMISES CONTROLLED<br>BY GRASSHOPPER GROUP, LLC C/O LOGMEIN,<br>INC.  ✚ | )<br>)<br>)    Case No.  20-ML-876<br>)<br>)<br>) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:       Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____ Massachusetts _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A, hereby incorporated by reference

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B, hereby incorporated by reference

**YOU ARE COMMANDED** to execute this warrant on or before ___July 10, 2020___ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to ___Robert B. Collings, United States Magistrate Judge___ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:   ___June 26, 2020 0:00 am___        _____
                                                                                            *Judge's signature*

City and state:  ___Washington, DC___                    ___Robert B. Collings, United States Magistrate Judge___
                                                                                            *Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>  20-ML-876 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |

Inventory of the property taken and name(s) of any person(s) seized:

| **Certification** |
|---|

        I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with (775) 332-0274 and is stored at premises owned, maintained, controlled, or operated by Grasshopper Group, LLC c/o LogMeIn, Inc., a company, which accepts service of legal process at 333 Summer Street, Boston, Massachusetts, 02210.

**ATTACHMENT B**

**Particular Things to be Seized and Procedures
to Facilitate Execution of the Warrant**

I.      **Information to be disclosed by Grasshopper Group, LLC c/o LogMeIn, Inc.
        ("PROVIDER") to facilitate execution of the warrant**

         To the extent that the information described in Attachment A is within the possession,

custody, or control of PROVIDER, regardless of whether such information is located within or

outside of the United States, including any records that have been deleted but are still available

to PROVIDER, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f),

PROVIDER is required to disclose the following information to the government for each account

or identifier listed in Attachment A ("Account"):

         a.      For the time period from January 4, 2018 to March 12, 2018:  The contents of all

voicemail, text, and multimedia messages stored and presently contained in, or on behalf of the

Account or any associated user;

         b.      For the time period from January 4, 2018 to March 12, 2018:  The machine

transcriptions of all voicemail and multimedia messages stored and presently contained in, or on

behalf of the Account or any associated user;

         c.      For the time period from January 4, 2018 to March 12, 2018:  All existing

printouts from original storage of all text messages;

         d.      For the time period from January 4, 2018 to March 12, 2018:  All transactional

information of all activity of the telephones and/or voicemail accounts described above,

including log files, messaging logs, local and long distance telephone connection records,

records of session times and durations, dates and times of connecting, methods of connecting,

telephone numbers associated with outgoing and incoming calls, cell towers used, and/or

locations;

       e.     For the time period from January 4, 2018 to March 12, 2018:  All text messaging

logs, including date and time of messages, and identification numbers associated with the

handsets sending and receiving the message;

       f.     For the time period from January 4, 2018 to March 12, 2018:  Incoming and

outgoing telephone numbers;

       g.     All records regarding identification of the Account, including names, addresses,

telephone numbers, alternative e-mail addresses provided during registration, means and source

of payment (including any credit card or bank account number), records of session times and

durations (including IP addresses, cookies, device information, and other identifiers linked to

those sessions), records of account registration (including the IP address, cookies, device

information, and other identifiers linked to account registration), length of service and types of

services utilized, account status, methods of connecting, and server log files;

       h.     All records pertaining to devices associated with the Account and software used

to create and access the Account, including device serial numbers, instrument numbers, model

types/numbers, International Mobile Equipment Identities ("IMEI"), Mobile Equipment

Identifiers ("MEID"), Global Unique Identifiers ("GUID"), Electronic Serial Numbers ("ESN"),

Android Device IDs, phone numbers, Media Access Control ("MAC") addresses, operating

system information, browser information, mobile network information, information regarding

cookies and similar technologies, and any other unique identifiers that would assist in identifying

any such device(s);

i.     All records indicating the services available to subscribers of individual accounts and/or identifiers described above;

j.     All records pertaining to communications between PROVIDER and any person regarding the Account, including contacts with support services and records of actions taken; and

k.     Information about any complaint, alert, or other indication of malware, fraud, or terms of service violation related to the Account or associated user(s), including any memoranda, correspondence, investigation files, or records of meetings or discussions about the Account or associated user(s) (but not including confidential communications with legal counsel).

Within 14 days of the service of this warrant, PROVIDER shall deliver the information set forth above via United States mail or courier to:  Robert C. Basáñez, Supervisory Special Agent, Federal Bureau of Investigation, J. Edgar Hoover Building, MLAT Unit, Room 7848, 935 Pennsylvania Avenue, NW, Washington D.C. 20535-0001, or e-mail to HQ_ISP_MLAT_Returns@FBI.gov.

## II.     Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence and instrumentalities of violations of criminal laws of Portugal, specifically Articles 217 and 218 regarding fraud, including for each Account, information pertaining to the following matters:

a.  Information that constitutes evidence of the identification or location of the user(s) of the Account;

b.  Information that constitutes evidence concerning persons who either (i) collaborated, conspired, or assisted (knowingly or unknowingly) the commission of the criminal activity under investigation; or (ii) communicated with the Account about matters relating to the criminal activity under investigation, including records that help reveal their whereabouts;

c.  Information that constitutes evidence indicating the Account user's state of mind, *e.g.*, intent, absence of mistake, or evidence indicating preparation or planning, related to the criminal activity under investigation;

d.  Information that constitutes evidence concerning how and when the Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the Account user;

e.  Information that constitutes evidence concerning fraud;

f.  Any communication pertaining to Brad Johnson, Regina Meier, and the company LEC Broker or its subsidiaries; and

g.  Any communication relating to customers' purchasing automobiles and the payment of invoices.

**III.     Government procedures for warrant execution**

The United States government will conduct a search of the information produced by the PROVIDER and determine which information is within the scope of the information to be seized specified in Section II.  That information that is within the scope of Section II may be copied and retained by the United States and shared with appropriate foreign authorities.

Law enforcement personnel will then seal any information from PROVIDER that does not fall within the scope of Section II and will not further review the information absent an order of the Court.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH ONE PHONE NUMBER STORED AT PREMISES CONTROLLED BY GRASSHOPPER GROUP, LLC C/O LOGMEIN, INC.** | **ML No. ___20-ML-876_____**<br><br>**Filed Under Seal** |

*Reference:*      *DOJ Ref. # CRM-182-66616; Subject Account: (775) 332-0274*

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Kathia Meade, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant for information associated with one account – that is, (775) 332-0274 – which is stored at premises controlled by Grasshopper Group, LLC c/o LogMeIn, Inc. ("PROVIDER"), a telephone service provider, which accepts service at 333 Summer Street, Boston, Massachusetts, 02210.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), 2703(c)(1)(A), and 3512(a), to require PROVIDER to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B, using the procedures described in Section III of Attachment B.

2.      The information requested in this search warrant is being sought pursuant to a request for assistance ("Request") from the Prosecutor General's Office in the Portuguese Republic ("Portugal"), transmitted to Washington, D.C.  Authorities in Portugal are investigating

unknown subjects for fraud offenses, which occurred from January 2018 to March 19, 2018, in violation of the criminal law of Portugal, specifically, Articles 217 and 218 of the Criminal Code of Portugal.  A copy of the applicable laws is appended to this application.  This Request is made pursuant to the Council of Europe, Convention on Cybercrime, *opened for signature* Nov. 23, 2001, T.I.A.S. 13174, C.E.T.S. 185 (entered into force for the United States Jan. 1, 2007) (hereinafter, the "Convention").  Under the Convention, the United States is obligated to render assistance in response to the request.

3.      I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have been since 2005.  I am currently assigned to the International Operations Division, Mutual Legal Assistance Treaty Unit, in Washington, D.C.  My current duties include responding to requests from foreign governments pursuant to mutual legal assistance treaties, including serving as the affiant on search warrant affidavits, serving search warrants, and reviewing the data received in response thereto for relevance in compliance with the parameters of the search warrants.  During my employment with the FBI, I have conducted investigations related to numerous criminal, counterintelligence, and counterterrorism violations.  I have written, executed search warrants and analyzed the collected evidence.  Additionally, I have received training in the collection, handling, and analyzing of search warrant evidence.

4.      The facts set forth in this affidavit are based upon information conveyed to the United States via a request made pursuant to the Convention by authorities in Portugal and upon my training and experience.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant.  It does not set forth all of my knowledge, or the knowledge of others, about this matter.

5.     Based on my training and experience and the facts as set forth in this affidavit, I respectfully submit that there is probable cause to believe that violations of the criminal laws of Portugal have been committed by unidentified individuals.  There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband or fruits of these crimes further described in Attachment B.

## JURISDICTION

6.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  *See* 18 U.S.C. § 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court "is acting on a request for foreign assistance pursuant to [18 U.S.C.] section 3512 . . ."  18 U.S.C. § 2711(3)(A)(iii); *see also* 18 U.S.C. § 3512(a)(2)(B) (court may issue "a warrant or order for contents of stored wire or electronic communications or for records related thereto, as provided under section 2703"), § 3512(c)(3) ("application for execution of a request from a foreign authority under this section may be filed . . . in the District of Columbia").

7.     This application to execute Portugal's request has been approved and duly authorized by an appropriate official of the Department of Justice, through the Criminal Division, Office of International Affairs ("OIA").[1]  *See* 18 U.S.C. § 3512(a).  An OIA attorney has authorized the undersigned to file this application.

---

[1]  The Attorney General, through regulations and Department of Justice directives, has delegated to the Office of International Affairs the authority to serve as the "Central Authority" under treaties and executive agreements between the United States and other countries pertaining to mutual assistance in criminal matters.  *See* 28 C.F.R. §§ 0.64-1, 0.64-4, and Appendix to Subpart K, Directive Nos. 81B and 81C (2018).

3

**PROBABLE CAUSE**

8.      According to authorities in Portugal, a Portuguese luxury car collector ("victim") hired a friend (the "consultant") to assist the victim in searching for new luxury automobiles and to advise on the purchase of these automobiles.  The consultant speaks and writes English fluently and is knowledgeable about automobiles.  In January 2018, the consultant saw an online advertisement for an automobile made by Ferrari (the "Ferrari") in the amount of EUR 825,000 (approximately USD 990,000) on a German website.

9.      With the victim's approval, on January 22, 2018, the consultant contacted an unknown person identified in the advertisement as Regina Meier ("Meier"), by sending an e-mail message to the listed e-mail account r.meier@luxuryandexoticcarbroker.com.  After exchanging e-mail correspondence with Meier and speaking with her on the phone, Meir informed the consultant that she only handled customs clearance and vehicle registration in Germany and that this particular vehicle was located in Montana.  In order to purchase the Ferrari, Meier advised the consultant to contact Brad Johnson ("Johnson") through the e-mail address sales@luxuryandexoticcarbroker.com.  According to Meier, Johnson represented the company LEC Broker and could assist with the purchase of the Ferrari.

10.      The consultant communicated with Johnson by first sending a message to the e-mail address sales@luxuryandexoticcarbroker.com.  The consultant and Johnson discussed the purchase of the Ferrari through e-mail and over the phone.  Johnson provided the phone number **(775) 332-0274** to the consultant as a good contact number and the consultant successfully connected with Johnson through this number.  After several e-mail messages and phone calls, the consultant and Johnson agreed to a purchase price of USD 800,000.  The victim signed a purchase agreement that included a provision where the victim would pay ten percent of the

4

Ferrari's cost as a deposit before the Ferrari could be seen and inspected.  Accordingly, the consultant on behalf of the victim, transferred USD 80,000 to a bank account provided by Johnson.

11.    On March 11, 2018, the consultant flew to Great Falls, Montana in order to inspect the Ferrari.  However, a representative from LEC Broker did not appear at the agreed-upon location and the consultant's phone calls to the phone number **(775) 332-0274** went unanswered.  The purchase agreement indicated that LEC Broker was located at 798 Industrial Park Drive, Carson City, Nevada.  The consultant traveled to this address in Nevada and found an empty parking lot.

12.    Suspecting fraud, the consultant went to the Carson City Sheriff's Office, where he made a written statement.  According to Portuguese authorities, the Sheriff's Office indicated to the consultant that other individuals had filed similar complaints pertaining to the company LEC Broker and its Carson City address.

13.    The victim filed a criminal complaint with Portuguese authorities on March 19, 2018.  The consultant provided a statement to Portuguese authorities detailing the e-mail and phone contact he had with Meier and Johnson, provided documents sent by LEC Broker, and allowed Portuguese authorities to access his e-mail account.

14.    This Court issued a court order to PROVIDER, pursuant to 18 U.S.C. §§ 2703(d) and 3512(a) in Case No. 19-ML-1906, on December 20, 2019, for certain non-content records associated with the phone number **(775) 332-0274**.  In response to this court order, PROVIDER produced subscriber records indicating that PROVIDER possessed forty-two voicemails connected with the phone number **(775) 332-0274** from January 4, 2018 to March 12, 2018.  The recorded duration of the messages indicates that at least thirty-five of these voicemails contain

5

substantive messages.  In other words, the caller did not immediately hang up the phone upon

getting Johnson's voicemail, but rather left a message.  The caller identification records

conveyed by PROVIDER confirmed that the consultant called Johnson and left Johnson at least

fifteen voicemails.  Further, callers, with phone numbers using the country codes associated with

Belgium, the United Kingdom, Peru, and the United States, also called Johnson and left

voicemails.  The additional voicemails indicate that Johnson had likely received messages from

other potential victims.

15.     To help identify and locate the unknown suspect(s), Portuguese authorities seek

additional records for the phone number **(775) 332-0274**.

### BACKGROUND CONCERNING PROVIDER'S ACCOUNTS

16.     The provider that services the phone number **(775) 332-0274** is PROVIDER.

17.     PROVIDER is a telephone service provider that provides Voice over Internet

Protocol ("VoIP") services through a virtual phone system.  A virtual phone system is a cloud-

based phone system that enables users to make and receive calls from anywhere using their

laptop or mobile device.  PROVIDER offers a mobile application that allows subscribers to

make and receive calls from a local or toll free phone number when using a personal mobile

device or laptop.  PROVIDER's services include providing phone numbers to subscribers,

extensions associated with that phone number, texting capabilities, call forwarding, customized

greetings, and virtual faxes, among other features, without requiring the subscribers to procur

any additional telephone equipment beyond a personal mobile device or laptop.

18.     Based on my training and experience, I have learned that stored electronic

communications, including retrieved and unretrieved voicemail, text, and multimedia messages

for PROVIDER's subscribers may be located on the computers of PROVIDER.  Further, I am

aware that computers located at PROVIDER contain information and other stored electronic

communications belonging to unrelated third parties.

19.     Telephone service providers often provide their subscribers with voicemail

services.  In general, a provider will store voicemail messages on behalf of a particular

subscriber until the subscriber deletes the voicemail.  PROVIDER's voicemail services also

include voicemail transcription.  By converting voicemails to text, this service enables the

subscriber to read the voicemails on the computer or smartphone device.  If the subscriber does

not delete the message and/or message transcription, either or both may remain in the system of

PROVIDER for weeks or months.

20.     Among the services commonly offered by telephone service providers is the

capacity to send short text or multimedia messages (photos, audio, or video) from one

subscriber's phone or wireless device to another phone or wireless device via one or more

wireless providers.  This service is often referred to as "Short Message Service" ("SMS") or

"Multimedia Messaging Service" ("MMS"), and is often referred to generically as "text

messaging."  Based on my knowledge and experience, I believe that stored electronic

communications, including SMS and MMS messages that have been sent or received by

subscribers, may be stored by PROVIDER for short periods incident to and following their

transmission.  In addition, providers occasionally retain printouts from original storage of text

messages for a particular subscriber's account.

21.     Telephone service providers typically retain certain transactional information

about the use of each telephone, voicemail, and text-messaging account on their systems.  This

information can include log files and messaging logs showing all activity on the account, such as

local and long distance telephone connection records, records of session times and durations,

7

lists of all incoming and outgoing telephone numbers or e-mail addresses associated with

particular telephone calls, voicemail messages, and text or multimedia messages.  Providers may

also have information about the dates, times, and methods of connecting associated with every

communication in which a particular cellular device was involved.

22.     Telephone service providers may also retain information about which cellular

handset or device was associated with the account when the messages were sent or received.

The provider could have this information because each cellular device has one or more unique

identifiers embedded inside it.  Depending upon the cellular network and the device, the

embedded unique identifiers for a cellular device could take several different forms, including an

Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile

Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile

Subscriber Identifier ("IMSI"), or an International Mobile Station Equipment Identity ("IMEI").

When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique

identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or

tower records those identifiers as a matter of course.

23.     Telephone service providers also maintain business records and subscriber

information for particular accounts.  This information could include the subscribers' full names

and addresses, the address to which any equipment was shipped, the date on which the account

was opened, the length of service, the types of service utilized, the ESN or other unique identifier

for the cellular device associated with the account, the subscribers' Social Security Numbers and

dates of birth, all telephone numbers and other identifiers associated with the account, and a

description of the services available to the account subscribers.  In addition, telephone service

providers typically generate and retain billing records for each account, which may show all

8

billable calls (including outgoing digits dialed).  The providers may also have payment

information for the account, including the dates, times and sometimes, places, of payments and

the means and source of payment (including any credit card or bank account number).

24.     In some cases, subscribers may communicate directly with a telephone service

provider about issues relating to the account, such as technical problems, billing inquiries, or

complaints from other users.  Telephone service providers typically retain records about such

communications, including records of contacts between the user and the provider's support

services, as well records of any actions taken by the provider or user as a result of the

communications.

25.     As explained above, information stored in connection with a PROVIDER account

may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal

conduct under investigation, thus enabling the investigating authorities to establish and prove

each element of the offense, or, alternatively, to exclude the innocent from further suspicion.

From my training and experience, I know that the information stored in connection with a

PROVIDER account can indicate who has used or controlled the account.  This "user

attribution" evidence is analogous to the search for "indicia of occupancy" while executing a

search warrant at a residence.  For example, data collected at the time of account sign-up,

information relating to account payments, and communications (and the data associated with the

foregoing, such as date and time) may indicate who used or controlled the account at a relevant

time.  Further, information maintained by PROVIDER can show how and when the account was

accessed or used.  For example, providers such as PROVIDER typically log the Internet Protocol

("IP") addresses from which users access the account along with the time and date.  By

determining the physical location associated with the logged IP addresses, investigators can

understand the chronological and geographic context of the PROVIDER account access and use relating to the criminal activity under investigation.  This geographic and timeline information may tend to either inculpate or exculpate the person who controlled, used, and/or created the account.  Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (*e.g.*, location information integrated into an image or video sent via text or e-mail).  Finally, stored electronic data may provide relevant insight into the user's state of mind as it relates to the offense under investigation.  For example, information in the PROVIDER account may indicate its user's motive and intent to commit a crime (*e.g.*, communications relating to the crime), or consciousness of guilt (*e.g.*, deleting communications in an effort to conceal them from law enforcement).[2]

## REQUEST TO SUBMIT WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

26.     I respectfully request, pursuant to Rules 4.1 and 41(d)(3) of the Federal Rules of Criminal Procedure, permission to communicate information to the Court by telephone in connection with this Application for a Search Warrant.  I submit that OIA Trial Attorney Jason F. Cunningham, an attorney for the United States, is capable of identifying my voice and telephone number for the Court.

---

[2]  At times, communication service providers such as PROVIDER can and do change the details and functionality of the services they offer.  While the information in this section is true and accurate to the best of my knowledge and belief, I have not specifically reviewed every detail of PROVIDER's services in connection with submitting this application for a search warrant.  Instead, I rely upon my training and experience, and the training and experience of others, to set forth the foregoing description for the Court.

## CONCLUSION

27.     Based on the forgoing, I request that the Court issue the proposed search warrant.
Because the warrant will be served on PROVIDER who will then compile the requested records
at a time convenient to it, there exists reasonable cause to permit the execution of the requested
warrant at any time in the day or night.

Respectfully submitted,

Kathia Meade
Special Agent
Federal Bureau of Investigation

Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on June 26, 2020.

_____
ROBERT B. COLLINGS
UNITED STATES MAGISTRATE JUDGE

11

## Relevant Provisions of the Criminal Code of Portugal

**Article 217 – Swindling**

1. Who, with the intention of obtaining for himself or for [another] the illegitimate enrichment, by mistake or mistake facts that he has astutely provoked, to determine others to commit acts that causes him, or to cause another person property damage, shall be imprisoned up to three years or with a fine.

…

**Article 218 - Qualified Fraud**

1. Any person who practices the act referred to paragraph 1 of the preceding article shall be punished, if the pecuniary loss is of value, with up to five years imprisonment or a fine up to 600 days.

2. The penalty is imprisonment of two to eight years if:
   a. The property damage is of a considerable high value;